**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy L. Fushi,<br><br>    Plaintiff,<br><br>v.<br><br>Bashas' Incorporated.,<br><br>    Defendant. | No. CV-10-02519-PHX-GMS<br><br>**ORDER** |

      Pending before the Court are Defendant's Motion for Summary Judgment (Doc. 37), Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 41), and Motion for Summary Ruling (Doc. 44). For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies the Motion to Strike and the Motion for Summary Ruling.

**FACTUAL BACKGROUND**

      This case arises out of an employment relationship between Plaintiff, Kathy Fushi ("Fushi"), and Defendant, Bashas', Inc. ("Bashas'"). Fushi has worked at Bashas' since 2002. Since 2005, Fushi has worked as a dairy clerk and cashier at a Bashas' location in central Phoenix, Arizona. (Doc. 38, ¶ 2.) She was assigned the tasks of stocking and merchandising dairy products and ringing up customers at the checkout counter. (*Id.*) During the period of Fushi's employment, Bashas' cut its labor budget significantly due to a sagging economy and falling sales, culminating in filing for bankruptcy protection in 2009. (*Id.*, ¶ 5.) Bashas' labor crunch forced employees, including Fushi, to balance multiple duties. (*Id.*) Tony Ching was Fushi's store manager between August 27, 2006

and October 9, 2009, but is no longer with the company. (*Id.*, ¶ 4.)

Fushi claims she was subject to some unequal treatment and ridicule during her employment with Bashas' due to her gender. Ching, the store director, would sometimes converse more with the male employees than with the females and would not call Fushi by her name. (*Id.*, ¶ 37.) Ching did not reprimand the night crew or Fushi's co-worker, Steve Flores, for not completing their tasks in the dairy, some of which were passed on to Fushi. (*Id.*, ¶ 38, 40.) When Fushi complained about the extra work in the dairy, her supervisor, Dennis Peoples, told her "not to cry" about it and to "just do it." (*Id.*, ¶ 41.) An employee, Jonathan Sell, told her that he was "her bitch" by assisting her with tasks but Fushi never reported this comment to Bashas'. (*Id.*, ¶ 42.)

On several occasions, management cited Fushi for job performance issues. In March 2008, Ching issued a Member Conference Memorandum ("MCM") to Fushi for numerous attendance issues. (*Id.*, ¶ 8.) In May 2009, Fushi was cited for spreading "rumors and gossip" against a co-worker but she refused to sign the MCM because she disputed the account. (*Id.*, ¶ 8.) On July 28, 2008 when Fushi's co-workers complained to management that she was exhibiting erratic behavior, her supervisor requested her to take a drug test pursuant to company policy, which she refused. (*Id.*, ¶ 13, 15.)

Sometime after Fushi complained about Ching to her district manager, Ching did not provide her with timely bagging assistance when she was working as a cashier. (*Id.*, ¶ 45; Doc. 13 at 4.) She was told to request assistance through her supervisor even though that was not required for other cashiers. (Doc. 13 at 4.) While Fushi would struggle with cashier duties, she claims her co-workers would be in the back of the store ridiculing her. (*Id.*; Doc. 38, ¶ 45.)

In February 2009, Fushi obtained a note from her doctor that she had developed "shingles," later determined to be a skin rash, due to her work in the store dairy. (Doc. 38, ¶ 26-28.) She was transferred from the dairy after submitting the note to her supervisors and the rash healed in time. (*Id.*, ¶ 26, 29.) Fushi requested and received FMLA leave on May 28, 2009 based on her skin problems and panic attacks. (*Id.*, ¶ 30.) On August 1,

2009, Fushi left work abruptly without informing the manager on duty.. (*Id.*, ¶ 32.) She felt compelled to leave due to a panic attack when she was not provided cashier assistance. (Doc. 13 at 4.) She returned to work on August 3, 2009 and she was called into Ching's office to discuss her abrupt departure from work. (Doc. 38, ¶ 33.) Fushi refused to meet with Ching unless she could bring in a witness. (*Id.*) After further argument, Ching accused her of insubordination and dismissed Fushi from work for the day. (*Id.*) At her deposition, Fushi acknowledged that at no time did Bashas' deny Fushi's FMLA leave requests. (*Id.*, ¶ 34.)

On July 14, 2009, Fushi filed a discrimination charge with the Arizona Civil Rights Division ("ACRD"). (*Id.*, ¶ 17.) On September 21, 2010 Fushi filed a complaint against Bashas' in an Arizona Superior Court. (Doc. 1, ¶ 3.) The case was removed to this Court on November 19, 2010. (Doc. 3.) The Court granted Bashas' Motion to Dismiss with Leave to Amend on May 10, 2011 and Fushi filed an Amended Complaint on June 6, 2011. (Doc. 12; Doc. 13.)

Fushi claims that Bashas' discriminated against her based on her gender in violation of Title VII, created a hostile work environment, and retaliated against her for opposing a practice made unlawful under Title VII. (Doc. 13 at 2-4.) In addition, Fushi contends that Bashas' interfered with her FMLA leave and retaliated against her for taking that leave. (*Id.* at 4-5.)

## DISCUSSION

**I.   MOTION TO STRIKE AND MOTION FOR SUMMARY RULING**

Bashas' filed its Motion for Summary Judgment on July 31, 2012. (Doc. 37.) Fushi's Response was to be submitted to this Court by September 4 but was filed three days late on September 7. (Doc. 40); *see* LRCiv 56.1(d) ("[T]he opposing party may have . . . thirty days after service within which to serve and file a responsive memorandum in opposition."). Bashas' filed its Motion to Strike on September 21, 2012. (Doc. 41.) Fushi's Response was filed two days late on October 11. (Doc. 45); *see* LRCiv 7.2(c) ("[T]he opposing party shall have fourteen days after service . . . within which to serve

and file a responsive memorandum."). Fushi's two and three days delay in filing her Responses is not excessive "[i]n light of the latitude we prefer to allow pro se plaintiffs." *Michenfelder v. Sumner*, 860 F.2d 328, 338 (9th Cir. 1988).

Bashas' argues that Fushi's Response to its Motion for Summary Judgment is deficient because it fails to set forth a controverting statement of facts according to Local Rule 56.1(b). (Doc. 41 at 2-3.) Bashas' contends that the separate statement filed with the Response is confusing in its numbering and its minimal references to Bashas' statement of facts. (*Id*. at 2.) Furthermore, Fushi allegedly cites to several facts without any support in the record. (*Id*. at 3.)

Fushi's statement of facts is convoluted at best. However, it does cite to Bashas' statement of facts and denies several factual claims therein. Although the numbering of the left column is confusing, that is not an egregious violation of the Rules. In the interest of deciding the Motion on the merits, the court will deny Defendant's Motion to Strike. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.").

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact

*because they may reasonably be resolved in favor of either party.'" Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis in original) (quoting *Anderson*, 477 U.S. at 250).

### B.     Title VII Claims

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), prohibits discrimination on the basis of gender. Except when there is direct evidence of discrimination, the analysis of a Title VII discrimination claim is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The *McDonnell Douglas* burden-shifting framework requires Plaintiff to first establish a prima facie case of discrimination. *See Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001). The burden then shifts to Defendant to articulate a legitimate nondiscriminatory reason for its employment decision. *Id.* In order to defeat Defendant's Motion for Summary Judgment, Plaintiff must then set forth specific and substantial evidence that the employer's purported reason for the adverse employment action was merely a pretext for a discriminatory motive. *Id.*

#### 1.     Gender Discrimination

Fushi alleges that Bashas' store management discriminated against her based on her gender. To withstand Bashas' motion for summary judgment, she must establish a prima facie case of disparate treatment by introducing evidence that "give[s] rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Fushi must show that "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).    Some of Fushi's gender discrimination claims fail because they do not amount to adverse employment actions. (Doc. 37 at 6.) Adverse employment actions may include any decision by an employer affecting "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To the extent that Fushi alleges that she was discriminated against by Ching

because he would sometimes converse more with the male employees than with the females and would not call Fushi by her name, such behavior by Ching, even if true, does not amount to an adverse employment action.[1] *See Strother v. Southern Cal. Permanente Med. Group,* 79 F.3d 859, 869 (9th Cir. 1996) ("Not every employment decision amounts to an adverse employment action.").

To the extent that Fushi alleges she was discriminated against because one of her co-worker's said he was her "bitch" when performing work for her[2], and that other employees would criticize her for not working or would "laugh smirk and ridicule" her, those actions too do not constitute adverse employment actions. "[O]stracism suffered at the hands of coworkers cannot constitute an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (citing *Strother*, 79 F.3d at 869).

Other of Fushi's gender discrimination claims fail because Fushi does nothing to establish that similarly situated men were treated more favorably. Fushi contends that she was "made to perform . . . the job description of other male co-workers, who were not doing their job requirements" including "down stacking milk products" to maintain the store dairy, which was physically laborious. (Doc. 13 at 2.) She was told by her supervisor, Dennis Peoples, "not to cry" but to "just do it." (Doc. 38, ¶ 41.) She was also called up to serve as a cashier although it was not her normal job function. (Doc. 13 at 3.) Even if these tasks changed the terms of her employment, Fushi does not have evidence that she was assigned those tasks due to her gender. Not only does she assert that "other female employees who worked with [her] were not asked to perform the same tasks" as she, she fails to offer any admissible evidence that male co-workers were not similarly subject to additional work. She does not establish that the night shift's unfinished tasks did not also fall on the shoulders of her male co-workers. (Doc. 40 at 3.) She also fails to

---

[1] It is further uncontested that Fushi cannot recall how often Ching said hello to the men or called them by name while not similarly greeting the women. Doc. 38 at 5 ¶ 37.

[2] There is no dispute that Fushi did not report this comment to her employer.

offer any evidence that other male cashiers were not also at times subjected to performing the cashier function without bagging assistance. She does not suggest that Bashas' nondiscriminatory reason for assigning her cashier duties without assistance – that Bashas' reduced labor budget and preparation for bankruptcy increased the workload on its employees – was pretextual. (*Id.*, ¶ 5.) Further, Plaintiff has come forth with no evidence to support her allegation that the night crew watched recorded video of her and started rumors about her.

Accordingly, Fushi fails to establish a prima facie case of gender discrimination.

### 2. Hostile Work Environment

Fushi contends that the actions of her supervisors and co-workers created a hostile work environment. Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). To prevail, Fushi must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005) (internal citations omitted). She must also show evidence sufficient to establish that any harassment that took place was because of gender. *Id.* (internal citations and quotations omitted).

In analyzing whether the alleged conduct created an objectively hostile work environment, this Court must assess all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270-71 (2001)). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions

of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation omitted).

Fushi does not produce evidence of sufficiently severe or pervasive discrimination to get to the jury on a hostile work environment claim. Most of the ridicule that she allegedly endured did not relate to her gender at all. Fushi alleges that co-workers observed her on surveillance cameras and spread rumors about her work performance. (Doc. 38, ¶ 39, 42.) One of them, Steve Flores, did not complete his tasks in the store dairy and that work was passed on to Fushi and other employees. (*Id.* at 40.) Fushi also contends that she was wrongly written up for spreading rumors and gossip and for walking off the job when she had fallen ill but has produced no evidence of this. (Doc. 13 at 3.) Fushi provides no evidence from which it could be concluded that these acts, to the extent they constitute harassment, were due to the fact that she is a woman.

Fushi also testified that Jonathan Sell, a co-worker, told her that he was "her bitch" for having to assist with her tasks, and made generalized complaints about other employees mocking her. (*Id.*, ¶ 42.) These remarks and actions have some connection to gender but they amount to offhand comments and isolated incidents. *See Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000) (holding that "[n]ot every insult or harassing comment" but rather, "[r]epeated derogatory or humiliating statements . . . constitute a hostile work environment."); *see also EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir. 1989), *overruled on other grounds, Burrell v. Star Nursery, Inc.,* 170 F.3d 951 (9th Cir. 1999) (finding "severe or pervasive" harassment when one supervisor "repeatedly engaged in vulgarities, made sexual remarks, and requested sexual favors" while another supervisor "frequently witnessed, laughed at, or herself made these types of comments."). Although Fushi may have subjectively felt that such comments created a hostile work environment, a reasonable woman would not. *See Dominguez-Curry*, 424 F.3d at 1034. Fushi fails to establish a prima facie case for a hostile work environment.

### 3. Retaliation

Fushi argues that her supervisors retaliated against her after she reported

discrimination to her district manager and to the ACRD. Title VII prohibits retaliation against an employee for any employment practice made unlawful by Title VII, or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to Title VII enforcement. 42 U.S.C. § 2000e–3(a); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1082 (9th Cir. 1996). Fushi must demonstrate that: (1) she engaged in an activity protected by Title VII; (2) her employer subjected her to a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003). An action may be materially adverse if it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Fushi engaged in a protected activity when she filed a charge with the ACRD on July 14, 2009.[3] (Doc. 38, ¶ 17.) Any adverse employment action taken by Bashas' against Fushi because of this activity would be retaliation. Fushi claims that as a cashier, she was not provided with bagging assistance for several minutes when there were many customers in line. (Doc. 13 at 4; Doc. 38, ¶ 41.) She was told that only a supervisor would approve her assistance request, which is not the normal procedure. (Doc. 13 at 4.) While this was occurring, her co-workers would be at the back of the store ridiculing her. (*Id.*) That Fushi's co-workers teased her for having difficulties as a cashier is not relevant to her retaliation claim. *See Faragher,* 524 U.S. at 788 (holding that Title VII is not a "general civility code" and "the sporadic use of abusive language, gender-related jokes, and occasional teasing" in the workplace is not actionable).

Fushi does not reveal when her supervisors began delaying cashier assistance to her. If it was before she filed her Complaint with the ACRD, then that is not retaliatory conduct. If after the Complaint, the delay must have been enough to dissuade a

---

[3] Fushi claims that Bashas' retaliated against her after she reported Tony Ching's harassment to the district manager. (Doc. 13 at 4.) However, she does not reveal when she spoke with the manager.

- 9 -

reasonable worker in Fushi's shoes to bring a discrimination charge against Bashas'. Fushi was eventually provided with bagging assistance. Moreover, lack of prompt assistance was the nature of Bashas' work environment. Many cashiers had to deal with the same challenge due to short-staffing and budget cuts. (Doc. 38, ¶ 5.) To the extent Bashas' claims that Fushi was not provided with prompt assistance due to labor constraints, Fushi offers no specific and substantial evidence of pretext. Fushi also claims that Bashas' retaliated against her by demanding that she take a drug test to which she did not submit. (*Id.*, ¶15.) However, she cannot connect Bashas' demand to a protected activity since that incident occurred in July 2008; one year prior to her filing a charge with the ACRD. Thus, Fushi has not established a prima facie case of retaliation by Bashas'.

    **C.**    **FMLA**

Fushi contends that Bashas' interfered with and retaliated against her for taking FMLA leave. Fushi may establish a claim for retaliation by showing that: "(1) [she] took FMLA-protected leave, (2) [she] suffered an adverse employment action, and (3) the adverse action was causally related to [her] FMLA leave." *Foraker v. Apollo Grp., Inc.,* 427 F.Supp.2d 936, 941 (D.Ariz. 2006); *see also Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124–26 (9th Cir. 2001). However, "[n]ot every employment decision amounts to an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (internal citation and quotation omitted). "[T]ermination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion" qualify as adverse employment actions. *Id.* To establish a claim for interference with FMLA leave, Fushi must have been denied her FMLA benefits to which she was entitled after providing sufficient notice of her intent to take leave. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

Bashas' did not deny nor interfere with Fushi's multiple requests for FMLA leave. (Doc. 38, ¶ 34.) When taking leave on August 1, 2009, Fushi left work in the middle of

her shift without informing her supervisors, although she allegedly told her district manager at a later time. (*Id.*, ¶ 32; Doc. 13 at 5-6.) When she returned to work on August 3, Ching met with her to discuss this violation of store policy. (Doc. 38, ¶ 33.) After an argument about who should be present in that meeting, Ching sent Fushi home for "being insubordinate." (*Id.*) Fushi did not provide adequate notice of her intent to take leave on August 1, 2009, and thus cannot establish a claim for interference based on this incident. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003) (holding that notice must have been "sufficient to make the employer aware that the employee needs FMLA qualifying leave, and the anticipated timing and duration of the leave"). As Fushi does not have evidence of any other acts of interference or retaliation, Bashas' is entitled to summary judgment on the FMLA claim.

## CONCLUSION

Fushi did not produce evidence that she suffered a materially adverse employment action based on her gender or in retaliation for protected activity. She has not shown sufficiently severe or pervasive discrimination to establish a hostile work environment claim. In addition, Bashas' did not interfere with Fushi's FMLA leave nor did she provide adequate notice for such leave.

**IT IS ORDERED AND ADJUDGED** by way of this Court, having granted Defendant's Motion for Summary Judgment, Plaintiff's Complaint is dismissed with prejudice. Plaintiff shall take nothing.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike and the Motion for Summary Ruling are **denied**.

Dated this 22nd day of January, 2013.

G. Murray Snow
United States District Judge

- 11 -